**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael B Wallace, | No. CV-22-00971-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Michael B. Wallace ("Plaintiff") challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 13), the Commissioner's answering brief (Doc. 17), and Plaintiff's reply (Doc. 18), as well as the Administrative Record (Doc. 10, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.      Procedural History

On February 20, 2020, Plaintiff filed an application for disability and disability insurance benefits, eventually alleging a disability onset date of January 1, 2020. (AR at 20-21.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.* at 20.) On May 10, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 20-31.) The Appeals Council later denied review. (*Id.* at 1-7.)

II.     Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.  20 C.F.R. § 416.920(a).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity.   20 C.F.R. § 416.920(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  *Id.* § 416.920(a)(4)(ii).  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *Id.* § 416.920(a)(4)(iii).  If so, the claimant is disabled.  *Id.*  If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work.  *Id.* § 416.920(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.  *Id.* § 416.920(a)(4)(v).  If not, the claimant is disabled.  *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citations omitted) (internal quotations omitted).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).  In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13

- 2 -

(9th Cir. 2001).

III.     The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the amended alleged onset date and that Plaintiff had the following severe impairments: "cervical spine degenerative disc disease with stenosis status post cervical fusion and lumbar degenerative disc disease with stenosis."  (AR at 23.)[1]  Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id.* at 24.)  Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b).  Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for 6 hours out of an 8-hour workday with normal breaks; he can sit for 6 hours out of an 8-hour workday with normal breaks; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; he can frequently balance; he can occasionally reach overhead bilaterally; he can occasionally operate foot controls bilaterally; he can occasionally be exposed to excessive vibration; he can occasionally be exposed to dangerous, moving machinery and unprotected heights; and he is allowed to stand and stretch one minute every hour when sitting.

(*Id.*)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.* at 25.)  The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. S. Gupta, M.D., state agency medical consultant (most "persuasive"); (2) Dr. M. Keer, D.O., state agency medical

---

[1]     The ALJ also noted that Plaintiff presented evidence of "gastroesophageal reflux disease, hypertension, and mild bilateral hand arthritis" but found that these impairments were not severe.  (*Id.* at 23.)

consultant (most "persuasive"); (3) Dr. Nima Salari, M.D., examining doctor (generally "unpersuasive"); and (4) Daniel J. Schneider, physical therapist ("unpersuasive").  (*Id.* at 27-29.)  Additionally, the ALJ considered third-party reports from Plaintiff's wife and friend but concluded that those reports did "not support the inclusion of greater limitations in the [RFC]."  (*Id.* at 29.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing his past relevant work as a telephone salesman and sales representative or estimator.  (*Id.* at 30-31.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (*Id.* at 31.)

IV.   Discussion

Plaintiff raises three issues on appeal: (1) whether the ALJ erred in analyzing Dr. Salari's opinions; (2) whether the ALJ improperly discredited Plaintiff's symptom testimony; and (3) whether the ALJ improperly rejected lay witness testimony.  (Doc. 13 at 1-2.)  As a remedy, Plaintiff seeks a remand for "payment of benefits" or a *de novo* hearing.  (*Id.* at 2.)

A.   **Dr. Salari**

1.   Standard Of Review

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence.  *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  The new regulations apply to applications filed on or after March 27, 2017, and are therefore applicable here.  The new regulations provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . .  The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).  Regarding the "supportability" factor, the new regulations

explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1).  Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).[2]

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*  With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up).  Although "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. . . .  [T]he ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.* (citation omitted).

…

---

[2]    Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider.  *Id.* § 416.920c(c).

2.      Dr. Salari's Opinions

Plaintiff's treating doctor, Dr. Salari, completed a "Residual Functional Capacity Questionnaire—Lumbar Spine" on March 17, 2021.  (AR at 524-26.)  In that form, Dr. Salari opined that Plaintiff could only work four hours per day, could only work 20 hours per week, and would likely be absent from work more than four days each month.  (*Id.* at 525-26.)  Dr. Salari also opined that Plaintiff could only sit for one hour at a time; could only sit for four hours in an eight-hour workday; could only stand for 30 minutes at a time; could only stand for two hours in an eight-hour workday; could only walk for 30 minutes at a time; and could only walk for two hours in an eight-hour workday.  (*Id.* at 525.) Additionally, Dr. Salari opined that Plaintiff's physical restrictions would cause various non-exertional limitations, including "moderately severe" limitations in Plaintiff's ability to pay attention to and/or concentrate on tasks; to maintain interpersonal relationships with supervisors, co-workers, or the public; to respond to customary work pressures or stress; and to provide consistent work effort.  (*Id.* at 526.)

Additionally, Dr. Salari completed four listing questionnaires.  First, on March 17, 2021, Dr. Salari completed a form entitled "Listing 1.04 Questionnaire."  (*Id.* at 523.) There, Dr. Salari checked boxes indicating that Plaintiff had two impairments (first, "a disorder of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord"; and second, "nerve root compression characterized by [among other things] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss"), confirmed that "I have reviewed the Commissioner's Listing of Impairments, Section 1.00 through 1.04," and opined that Listing 1.04 was met or equaled as early as January 2020.  (*Id.*)  Second, on March 31, 2021, Dr. Salari completed another version of Listing Questionnaire 1.04.  (*Id.* at 550.)  There, Dr. Salari stated that Plaintiff's functional restrictions were first present on May 1, 2019.  (*Id.* at 550.)  Third, on April 21, 2021, Dr. Salari completed a form entitled "Listing Questionnaire 1.15."  (*Id.* at 551-52.) There, Dr. Salari opined that although Plaintiff had "a disorder of the skeletal spine resulting in compromise of a nerve root(s)," that condition did not satisfy all of the

1

2

3

4

5

necessary requirements under Listing 1.15.  (*Id.*)  Fourth, also on April 21, 2021, Dr. Salari completed a form entitled "Listing Questionnaire 1.16."  (*Id.* at 553-54.)  There, Dr. Salari opined that although Plaintiff had "lumbar spinal stenosis resulting in compromise of the cauda equina," that condition did not satisfy all of the necessary requirements under Listing 1.16.  (*Id.*)

6

### 3.   The ALJ's Evaluation Of Dr. Salari's Opinions

7

8

The ALJ deemed Dr. Salari's opinions "unpersuasive," albeit with one caveat.  (*Id.* at 28.)  The ALJ's full rationale was as follows:

9

10

11

12

13

14

15

16

> The medical opinions of Dr. Salari are unpersuasive because the assessments are not supported by relevant objective medical evidence, inconsistent with evidence from other medical and nonmedical sources, and contradicted by other factors.  In forms dated March 17, 2021, Dr. Salari opined that the claimant met section 1.04A.  In another form dated March 17, 2021, Dr. Salari also opined the claimant could only work four hours a day, 20 hours a week including standing and walking a total of two hours each in an eight hour workday.  The doctor also determined the claimant would likely be absent from work more than four times a month as a result of his impairments or treatment.  In a form dated March 31, 2021, Dr. Salari opined the claimant met listing 1.04A prior to January 1, 2020.

17

18

19

20

21

22

23

24

25

26

27

28

> First, a supportable explanation was not provided because there were insufficient references to medically acceptable objective clinical or diagnostic findings and seem to be based on the claimant's subjective complaints.  Second, a supportable explanation was not provided because the medical source merely checked boxes on a form and the lines on the form allowing for an explanation were inadequately completed.  The March 17, 2021 form is internally inconsistent indicating the claimant can only work four hours per day, but can sit 4 hours per day, stand 2 hours per day, and walk 2 hours per day.  Third, the objective medical evidence, including the claimant's use of only standard treatment, does not support the extreme assessments.  For instance, regarding listing 1.04, there was no consistent evidence of motor loss of atrophy.  There was also no need for an assistive device.  The undersigned also notes this listing is obsolete and listings 1.15 and 1.16 are now applicable.  Fourth, evidence from other medical or nonmedical sources are inconsistent with the assessments.  Fifth, the medical opinion is inconsistent with the claimant's admitted activities of daily living, which have already been described above in this decision. Performance of this wide range of ordinary tasks is inconsistent with severe limitations and casts doubts on this opinion.  Accordingly, these opinions are unpersuasive.

> Later, in a form dated April 21, 2021, Dr. Salari indicated that the claimant did not meet listing 1.15 or listing 1.16. The undersigned finds this specific opinion is persuasive based on factors of supportability and consistency. This opinion is consistent with the claimant's clinical and diagnostic findings as detailed above. Hence, the undersigned find this opinion is persuasive.

(*Id.*, cleaned up.)

### 4.   The Parties' Arguments

Plaintiff argues that the ALJ "improperly rejected critical aspects of Dr. Salari's opinion in the absence of legally adequate reasons for doing so." (Doc. 13 at 16.)[3] According to Plaintiff, "Dr. Salari's opinions were not inconsistent with the medical treatment notes from other medical evidence he reviewed, including [Plaintiff's] diagnostic imaging." (*Id.* at 11.) More specifically, Plaintiff argues that (1) although the ALJ viewed Dr. Salari's opinion that Plaintiff had "'decreased sensation' in upper extremity" as inconsistent with Dr. McCunniff's treatment notes indicating "that [Plaintiff] had 'normal sensation in the upper extremity,'" this finding of inconsistency was based on a mischaracterization of Dr. McCunniff's notes; (2) Dr. Salari's opined limitations are consistent with the evidence in the record concerning Plaintiff's daily activities, which demonstrates that Plaintiff cannot play guitar, sit comfortably on a three-hour flight, or drive; and (3) Dr. Salari's opinions are consistent with Plaintiff's conservative course of treatment because Dr. Salari later recommended surgery. (*Id.* at 12-15, cleaned up.) Regarding supportability, Plaintiff argues that "contrary to the ALJ's assertion, Dr. Salari did support his conclusions with a full examination of [Plaintiff], including objective findings, and did not base his conclusions solely on [Plaintiff's] subjective complaints." (*Id.* at 12.) Plaintiff argues that "Dr. Salari offered a detailed explanation as to how [Plaintiff's] imaging results corresponded to his symptoms and [Plaintiff's] functional

---

[3]   One of Plaintiff's specific arguments is that the ALJ improperly accused Dr. Salari of being biased by stating that "Wallace was evaluated by Dr. Salari 'at request of attorney.'" (*Id.* at 10.) In response, the Commissioner contends that the ALJ "made no findings that the opinion was therefore 'biased'" and that Plaintiff's argument is "wholly speculative." (Doc. 17 at 14.) The Court agrees with the Commissioner that the ALJ did not cite bias as a reason to discredit Dr. Salari's opinions.

- 8 -

limitations.  Dr. Salari did not simply 'check boxes on a form' as the ALJ asserts."  (*Id.*)

The Commissioner disagrees and defends the sufficiency of the ALJ's rationale.  (Doc. 17 at 10-14.)  The Commissioner contends there is substantial evidence to support the ALJ's evaluation of supportability because "[Dr. Salari's] opinions lacked references to objective medical evidence and instead appeared significantly based on Plaintiff's subjective symptom complaints, which the ALJ discounted for good reasons."  (*Id.* at 11, citations omitted.)  The Commissioner also argues that it was permissible for the ALJ to discount Dr. Salari's opinions because Dr. Salari "'merely checked boxes on a form' and 'inadequately completed' the lines on the form that allowed for more explanation."  (*Id.*, citation omitted)  As for the consistency factor, the Commissioner contends that substantial evidence supports the ALJ's findings that (1) "Dr. Salari made unsupported 'extreme assessments' that were inconsistent with the record as a whole"; (2) "Dr. Salari's form opinion was 'internally inconsistent'"; (3) Dr. Salari's "opinion was inconsistent with other medical source opinion evidence, including the prior administrative findings of Drs. Gupta and Keer"; and (4) "Dr. Salari's opinion was inconsistent with Plaintiff's daily activities."  (*Id.* at 12-14, citations omitted.)   In response to Plaintiff's contention that the ALJ mischaracterized Dr. McCunniff's treatment notes, the Commissioner argues that Dr. McCunniff made a typographical error by referring to the lower extremity rather than the upper extremity because other treatment notes from Dr. McCunniff's clinic cite normal sensation in Plaintiff's upper extremities.  (*Id.* at 13, citations omitted.)

In reply, Plaintiff essentially restates the arguments that appear in his opening brief.  (Doc. 18 at 2-4.)

5.   Analysis

The ALJ's evaluation of Dr. Salari's opinions was free of harmful error.  As noted, "[t]he agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings."  *Woods*, 32 F.4th at 792 (cleaned up).  Here, the ALJ expressly considered both of the required factors.  (AR at 28 [concluding, *inter alia*, that

"[t]he medical opinions of Dr. Salari are unpersuasive because the assessments are not supported by relevant objective medical evidence [and] inconsistent with evidence from other medical and nonmedical sources," because "a supportable explanation was not provided," and because "evidence from other medical or nonmedical sources [is] inconsistent with the assessments"].)

Additionally, the ALJ's conclusions as to each factor were supported by substantial evidence.  Beginning with the consistency factor, one of the ALJ's proffered reasons for discounting Dr. Salari's opinions was that "the objective medical evidence . . . does not support the extreme assessments.  For instance, regarding listing 1.04, there was no consistent evidence of motor loss o[r] atrophy."  (AR at 28.)  Substantial evidence supports this conclusion.  As noted, in the Listing 1.04 Questionnaire, Dr. Salari indicated that Plaintiff had "nerve root compression characterized by [among other things] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss."  (AR at 523.)  However, multiple other providers indicated in treatment records that Plaintiff did *not* have motor loss/atrophy accompanied by sensory or reflex loss.  (*See, e.g.*, *id.* at 336-37 [March 4, 2020 note from PT Jagodzinski, indicating normal gait]; *id.* at 344 [January 13, 2020 note from NP Rach, indicating that Plaintiff "denies leg weakness, numbness or tingling" and that Plaintiff had "normal gait and station]; *id.* at 353 [March 5, 2020 note from NP Rach, again indicating "Normal gait"]; *id.* at 403 [February 26, 2020 note from FNP-C Oarde: "NO obvious wasting atrophy of the limbs, STRENGTH: 5/5    . . . , SENSATION: intact throughout"]; *id.* at 410 [March 5, 2020 note from FNP-C Mello, indicating "Normal gait," 4/5 strength, and intact sensation]; *id.* at 483 [November 23, 2020 note from Dr. Baker: "neuro strength 4/5, gait stable"]; *id.* at 505 [March 9, 2021 note from Dr. McCunniff: "There is 5/5 motor strength in all muscle groups of the lower extremities"]; *id.* at 508-09 [February 23, 2021 "Nerve Conduction & Electromyographic Report," concluding that "[t]he motor conduction test was normal in all 4 of the tested nerves"].)  It was rational for the ALJ to conclude that these objective medical records were inconsistent with Dr. Salari's opinions.  *Thomas*, 278 F.3d at 954

("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.") (citation omitted). *Cf. Rolus v. Colvin*, 2016 WL 5316821, *3 (W.D. Okla. 2016) (noting that "absent evidence of muscle atrophy/sensory loss, [a claimant] cannot meet Listing 1.04(A)" and affirming the ALJ's determination that Listing 1.04(A) was not satisfied because the ALJ cited examination records in which providers indicated that the claimant had "no evidence of muscular atrophy" and "no sensory loss in [his] lumbosacral spine").

Another of the ALJ's proffered reasons for discounting Dr. Salari's opinions pursuant to the consistency factor was that they conflicted with the less-restrictive opinions of the other medical sources whom the ALJ deemed persuasive.  (AR at 28 ["Fourth, evidence from other medical or nonmedical sources are inconsistent with the assessments."].)  This, too, is a permissible basis for discounting a medical source's opinions.  *See generally* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").  *Cf. Michele I. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4533962, *5-6 (D. Or. 2022) ("The ALJ did not err in his consideration of PA Laughlin-Hall's opinion.  The ALJ considered the two most important factors in evaluating PA Laughlin-Hall's medical opinion—supportability and consistency—and the record supports the ALJ's conclusions.  The ALJ . . . not[ed] PA Laughlin-Hall's opinion 'markedly conflict[s] with opinions of the reviewing physicians for the State agency who examined the claimant's medical records' . . . .  The ALJ's consideration of PA Laughlin-Hall's medical opinion is supported by substantial evidence."); *Rafael G. v. Kijakazi*, 2022 WL 3019935, *6 (S.D. Cal. 2022) ("[I]inconsistency with two similar agency consultant opinions further supports the ALJ's inconsistency finding.").  The ALJ's finding of inconsistency was also supported by substantial evidence—for example, Dr. Salari's opinion that Plaintiff could only stand and walk for two hours in an eight-hour workday (AR at 525) conflicted with the "more persuasive" opinions of the state agency consultants, who opined that Plaintiff could stand

and walk for six hours in an eight-hour workday (*id.* at 27, citing *id.* at 89, 104).

Given these conclusions, it is unnecessary to resolve Plaintiff's challenges to the ALJ's other reasons for discounting Dr. Salari's opinions pursuant to the consistency factor.  Any error (including any error regarding the ALJ's summary of Dr. McCunniff's notes) was harmless in light of the sufficiency of the ALJ's other reasons.  *See, e.g., Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) ("To the extent the ALJ erred in discounting the opinions of Dr. Cochran because her opinions were based in part on Reed's self-reports of his symptoms, that error is harmless because the ALJ offered multiple other specific and legitimate reasons for discounting Dr. Cochran's opinions."); *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) ("Two of the reasons the ALJ provided for discounting examining psychologist Dr. Wheeler's opinion were not legally valid . . . [but] the ALJ provided other specific and legitimate reasons for discounting Dr. Wheeler's opinion. . . . As a result, any error was harmless."); *Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944-45 (9th Cir. 2017) ("The ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the terms 'mild,' 'moderate,' or 'severe' in his assessment. This criticism was improper . . . [but] this error was harmless because the ALJ gave a reason supported by the record for not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with more recent treatment notes from Dr. Mateus.").

Turning to the supportability factor, one of the ALJ's proffered reasons for discounting Dr. Salari's opinions was that "a supportable explanation was not provided because there were insufficient references to medically acceptable objective clinical or diagnostic findings and seem to be based on the claimant's subjective complaints."  (AR at 28.)  This conclusion, albeit expressed with less than ideal clarity, was supported by substantial evidence.  As discussed above, one of Dr. Salari's opinions was that Plaintiff had motor loss/atrophy accompanied by sensory or reflex loss.  In addition to being inconsistent with the objective treatment records from other medical providers (and thus discountable pursuant to the consistency factor), this opinion was also inconsistent with Dr. Salari's own records—in the RFC questionnaire, Dr. Salari did not indicate that

Plaintiff had an abnormal gait.  (*Id.* at 524.)  Similarly, Dr. Salari's notes from a motor examination of Plaintiff indicate that Plaintiff had 5/5 strength in all lower extremities, with the caveat that "[p]atient *subjectively* complained of increased pain throughout the motor exam." (*Id.* at 519, emphasis added.)  It was rational under these circumstances for the ALJ to conclude that Dr. Salari's opinions could be discounted pursuant to the supportability factor.

Another of the ALJ's proffered reasons for discounting Dr. Salari's opinions was that they were internally inconsistent.  (*Id.* at 28 [concluding that "a supportable explanation was not provided because," *inter alia*, "[t]he March 17, 2021 form is internally inconsistent" and Dr. Salari offered conflicting opinions in the "form[s] dated April 21, 2021 [which] indicated that the claimant did not meet listing 1.15 or listing 1.16"].)  This is another permissible basis for discounting a medical source's opinions pursuant to the supportability factor.  *See, e.g., Katherine M. v. Comm'r of Soc. Sec.*, 2022 WL 36891, *4 (W.D. Wash. 2022) ("Plaintiff has not shown that the ALJ erred by finding Dr. Sciarrone's opinion unpersuasive by considering the internal inconsistencies in the doctor's opinion."). *See generally Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("Internal inconsistencies within Dr. Reaves's and Dr. Grosscup's reports . . . also constitute relevant evidence . . . [from which the ALJ could] discount the opinions of Dr. Reaves and Dr. Grosscup . . . .").  The ALJ's finding of internal inconsistency was supported by substantial evidence.  Although Dr. Salari opined in the Listing 1.04 Questionnaire that Plaintiff had motor loss/atrophy accompanied by sensory or reflex loss (AR at 523), Dr. Salari opined in Listing Questionnaire 1.15 that Plaintiff did not have any "[m]uscle weakness" or "[s]ign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root" (*id.* at 551) and opined in Listing Questionnaire 1.16 that Plaintiff did not have any "[m]uscle weakness" or "[s]ensory nerve deficit . . . on electrodiagnostic testing" (*id.* at 553).  It was rational for the ALJ to conclude that these opinions were inconsistent.  Separately, although Dr. Salari opined in the RFC questionnaire that Plaintiff could only work four hours a day, Dr. Solari also concluded a

few lines later that during an eight-hour day, Plaintiff could sit for four hours, stand for two hours, and walk for two hours.  (*Id.* at 525.)  It was also rational for the ALJ to conclude that these findings were internally inconsistent.

Given these conclusions, it is unnecessary to resolve Plaintiff's challenges to the ALJ's other reasons for discounting Dr. Salari's opinions pursuant to the supportabilty factor.  *Reed*, 834 F. App'x at 329; *Baker*, 720 F. App'x at 355; *Presley-Carrillo*, 692 F. App'x at 944-45.

B.   **Symptom Testimony**

1.   Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted).  If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted).  Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (citation omitted).

2.   The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ held that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR at 25.)  The ALJ then identified what the Court perceives to be three reasons for discounting Plaintiff's symptom testimony.  (*Id.* at 25-27.)

The first reason was inconsistency with the objective medical evidence.  After noting that "musculoskeletal examinations . . . generally showed normal, full strength of the bilateral upper extremities and bilateral lower extremities and no distress despite

complaints," noting that Plaintiff's "straight-leg-raising-test was negative on March 5, 2020," and discussing various pieces of "diagnostic evidence," the ALJ concluded that those records were inconsistent with Plaintiff's claimed "inability to work due to chronic pain, numbness and tingling in bilateral lower extremities and inability to engage in prolonged sitting and/or standing status post several motor vehicle accidents." (*Id.* at 25-27.)

The second reason was Plaintiff's pursuit of "only conservative and/or standard treatment," which the ALJ deemed "not comparable to" the "degree of the claimant's subjective complaints." (*Id.* at 26-27.)  In support, the ALJ cited treatment notes stating that Plaintiff pursued "treatment with a pain management specialist, physical therapy, and injections" and reported symptom relief of up to 80% after such treatments. (*Id.* at 26.)

The third reason was inconsistency with Plaintiff's activities of daily living ("ADLs").  The ALJ found that Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.* at 27.)  For example, the ALJ noted that Plaintiff "uses a salt-water pool and kicks with his legs to relieve pain" and "tries to go every day, five to six days a week and is in there an hour and a half and then is in sauna [for a] half hour." (*Id.*, citation omitted.)  The ALJ also noted that Plaintiff drives, "has to stretch two hours before he gets up," "'frequently practices' playing guitar," and "just flew to Seattle and sat on [an] airplane for three hours" after walking to the gate without a wheelchair. (*Id.*, citations omitted.)

### 3.   The Parties' Arguments

Plaintiff argues that the ALJ failed to provide "specific, clear, and convincing findings" to discredit his symptom testimony. (Doc. 13 at 16-19.)  Plaintiff argues that the ALJ's reasoning is flawed because (1) "[i]t was improper for the ALJ to single out 'a few periods of temporary well-being from a sustained period of impairment'" when the record supports that he cannot "sustain activity for a full work day and work week"; (2) "Dr. Salari[] opined that [Plaintiff's] reports of symptoms were entirely consistent with the physical examination results and with the results Dr. Salari reviewed from the [X]-Rays

and MRIs of [Plaintiff's] lumbar and cervical spine" and, in contrast, "[t]he ALJ has not identified any specific aspect of the medical evidence which is actually inconsistent with any specific aspect of [Plaintiff's] testimony"; and (3) his pursuit of conservative treatment methods should not be viewed as discrediting because "Dr. Salari opined that [he] had exhausted his conservative options for treatment and that surgery was the likely next step." (*Id.* at 17-19, cleaned up.)

In response, the Commissioner contends that "the ALJ [properly] discounted Plaintiff's subjective symptom complaints because of inconsistencies with (1) objective medical and other evidence, (2) improvements through conservative treatment, and (3) activities of daily living." (Doc. 17 at 6.)  More specifically, the Commissioner first argues that Plaintiff's testimony was inconsistent with the objective medical evidence because although Plaintiff testified that he could not "engage in prolonged sitting and/or standing," medical evidence demonstrated that (1) "Plaintiff could sit, stand, walk, and balance frequently; he could also reach, stoop, and crouch occasionally"; (2) despite one recent positive straight leg raising ("SLR") test in 2021, Plaintiff had a negative balance test, several negative SLRs in 2020, "normal gait," and "demonstrated '5/5 motor strength in all muscle groups of the lower extremities' and intact sensation"; and (3) Plaintiff did not have "muscle wasting or atrophy."  (*Id.* at 6-7, cleaned up.)  Regarding treatment, the Commissioner argues that the ALJ's analysis did not "single[] out periods of temporary well-being from a sustained period of impairment," but rather considered Plaintiff's limitations and improvements over time and concluded that Plaintiff's improvements over time with "conservative and/or standard treatment" demonstrated "that the degree of the claimant's subjective complaints is not comparable to the extent of treatment sought by the claimant."  (*Id.* at 7-9, citations omitted.)  Regarding ADLs, the Commissioner argues that "[t]he ALJ found that Plaintiff's reported activities were inconsistent with the severity of his subjective symptom complaints."  (*Id.* at 9-10, citation omitted.)

In reply, Plaintiff essentially reiterates the arguments from the opening brief, specifically that (1) "[Plaintiff's] testimony is consistent with the opinion and objective

evidence included in the report from his examining doctor, Dr. Salari"; (2) Plaintiff's conservative treatments "have not provided significant, ongoing relief of his pain, and [Plaintiff's] doctors have noted that surgery is likely next"; and (3) Plaintiff's testimony is consistent with Plaintiff's ADLs.  (Doc. 18 at 4-6.)

> 4.   Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.

First, it was permissible for the ALJ to discount Plaintiff's symptom testimony on the ground that it was inconsistent with the objective medical evidence in the record. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted).  Although this may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony.  That is a misreading of [Ninth Circuit law].  When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.  We have upheld ALJ decisions that do just that in many cases.") (citations omitted); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ's finding of inconsistency with the objective medical evidence is supported by substantial evidence.  As the Commissioner notes, the ALJ specifically identified medical examinations that "generally showed normal, full strength of the bilateral upper extremities and bilateral lower extremities and no distress despite complaints."  (AR at 25,

citing 344-45, 350, 385, 475-98, 500.)  It was rational for the ALJ to conclude that such examination results were inconsistent with Plaintiff's hearing testimony that he "can hardly do anything," experiences extreme pain from squatting ("probably the most painful thing to do is squat down to the floor"), and cannot even pour a glass of wine without his hands shaking.  (*Id.* at 50, 63.)  Although Plaintiff attempts to explain how the cited records could be construed as consistent with his symptom testimony, it was rational for the ALJ to conclude otherwise.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citation omitted).

Another of the ALJ's proffered reasons for the adverse credibility finding was inconsistency between Plaintiff's symptom testimony and Plaintiff's ADLs.  This, too, is a permissible basis for an adverse credibility finding under Ninth Circuit law.  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. . . .  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

The ALJ's finding of inconsistency between Plaintiff's testimony and ADLs was supported by substantial evidence.  Plaintiff asserted in his function reports that his "range of motion is very limited [and] causes pain when moving [his] neck" and that he "cannot sit for long periods or stand for long periods."  (AR at 233-34.)  However, Plaintiff elsewhere acknowledged that he can drive for between 30 minutes to "[an hour] or so," stretches daily for two hours, helps with household chores, swims for physical therapy five-to-six days a week, and plays guitar.  (*Id.* at 50 [stretches]; *id.* at 52 [household activities];

- 18 -

*id.* at 53 [guitar]; *id.* at 57-58 [swimming]; *id.* at 235 [driving]; *id.* at 470 [guitar].) Although Plaintiff emphasizes, when describing these activities, that his ability to perform them is limited—he only played three songs on the guitar three months ago and while swimming, he uses a pool noodle (*id.* at 53, 58)—it was still rational for the ALJ to conclude that Plaintiff's ability to perform those activities in even a limited fashion was inconsistent with Plaintiff's more extreme description of his limitations.  The Ninth Circuit has recognized that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014).  This makes sense—a factfinder is entitled to discount the credibility of a witness who has been shown to have testified in a false or exaggerated manner even if the impeaching material does not, on its own, foreclose the claim for relief.  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . .").  *See generally* 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").  Perhaps a different factfinder might have declined to find inconsistency under these circumstances, but "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas*, 278 F.3d at 954 (citation omitted).

Given these conclusions, it is unnecessary to decide whether the ALJ's third proffered reason for discounting Plaintiff's symptom testimony—inconsistency with Plaintiff's conservative course of treatment—was also supported by substantial evidence. Any error as to that issue was harmless because the ALJ identified multiple other clear and

convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.") (citations omitted); *Carmickle*, 533 F.3d at 1162-63 ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . .  [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . .  Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.") (citation omitted).

### C.   **Lay Witness Testimony**

#### 1.   The Parties' Arguments

Plaintiff notes that his wife, Shari Short, and his friend, Richard Smokovich, each completed "questionnaire[s] describing [his] limitations." (Doc. 13 at 19-20.) Plaintiff further notes that the ALJ seemed to cross-reference the ALJ's rationale for discrediting Plaintiff's symptom testimony when explaining why the ALJ was not fully crediting those third-party statements. (*Id.*)  Plaintiff argues that because "the ALJ's rationale for discrediting [Plaintiff's] own testimony was legally inadequate," that rationale was "equally inadequate as applied to the statements of these witnesses." (*Id.* at 20-21.) According to Plaintiff, the ALJ failed "to base the rejection of the lay witness statements on the record and to give specific and legitimate reasons germane to each witness," meaning "[t]here is no reliable evidence to support the ALJ's contrary conclusion" that the lay witnesses' statements are inconsistent with the record. (*Id.* at 21.)

In response, the Commissioner argues that "ALJs are not required to articulate how they consider evidence from non-medical sources" under the new regulations. (Doc. 17 at 14.)  Alternatively, the Commissioner argues that affirmance is required because "[e]ven if the ALJ had not provided any discussion of the nonmedical source statements, the alleged

1   error would have been harmless because the nonmedical source statements are substantially

2   the same as Plaintiff's subjective symptom complaints, which the ALJ provided good

3   reasons for discounting." (*Id.* at 15, cleaned up.)

4       In reply, Plaintiff essentially reiterates the arguments from his opening brief. (Doc.

5   18 at 6-7.)

6                               2.   <u>Analysis</u>

7       Plaintiff is not entitled to reversal based on his arguments regarding the lay witness

8   statements. As an initial matter, the Court notes that the Ninth Circuit has not definitively

9   resolved whether ALJs must continue, following the issuance of the new SSA regulations

10  in 2017, to provide reasons for rejecting lay-witness statements. Lower courts have

11  reached conflicting decisions on that issue. *Compare Stricker v. Acting Comm'r of Soc.*

12  *Sec. Admin.*, 2022 WL 3588215, *6 (D. Ariz. 2022) ("Pursuant to Ninth Circuit caselaw

13  from 1993, '[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must

14  give reasons that are germane to each witness'. . . . Defendant argues that caselaw no

15  longer applies because the regulations have changed . . . [but] [t]his regulatory change does

16  not provide that an ALJ need not articulate any reason for discounting evidence from lay

17  witnesses, it only states that the ALJ's consideration need not follow the requirements for

18  evaluating medical opinions. This regulatory change is not inconsistent with the Ninth

19  Circuit's germane-reasons standard.") (citations omitted) *with Wendy J. C. v. Saul*, 2020

20  WL 6161402, *12 n.9 (D. Or. 2020) ("The new regulations provide the ALJ is 'not required

21  to articulate how [they] considered evidence from nonmedical sources . . . .' As such, the

22  ALJ is no longer required to provide reasons germane to lay witnesses to reject their

23  testimony.") (citations omitted).

24      Nevertheless, even assuming the reasoning requirement remains intact, the Ninth

25  Circuit has recognized that the failure to provide such reasoning is harmless where (1) the

26  ALJ provided legally sufficient reasons for rejecting the claimant's symptom testimony

27  and (2) the lay witness did not describe any limitations beyond those identified by the

28  claimant. *Molina*, 674 F.3d at 1122 ("Here, the ALJ failed to explain her reasons for

rejecting the lay witnesses' testimony.  That testimony, however, did not describe any limitations beyond those Molina herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons. . . .  Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing Molina's testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.  Accordingly, the ALJ's error was harmless.").

Here, the ALJ satisfied both conditions required for discrediting lay witnesses—the ALJ's rationale for discrediting Plaintiff's symptom testimony was legally valid, for the reasons stated in Part IV.B above, and the third-party statements did not identify any limitations beyond those Plaintiff identified via his own testimony.  (AR at 50-70 [Plaintiff's testimony]; *id.* at 283-89 [wife's report]; *id.* at 290-96 [friend's report].)  Indeed, Plaintiff does not suggest that his wife's and friend's statements described any limitations beyond those he identified—his argument is that because the ALJ's rationale for discrediting him was legally insufficient, that rationale was also legally insufficient as applied to the lay witnesses.  For the reasons stated above, that argument is unavailing.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 30th day of September, 2023.

_____
Dominic W. Lanza
United States District Judge

- 22 -